KELLY, C.J.
(concurring). I concur in parts I, II, 111(A), III(B), and IV of the lead opinion. I concur in the result only with respect to part III(C) of the lead opinion. I write separately to articulate my preferred approach to stare decisis.
Even when a decision is wrongly decided, we must apply the doctrine of stare decisis when deciding whether to overrule it. Our analysis should always begin with a presumption that upholding precedent is the preferred course of action.[1] That presumption should prevail unless effectively rebutted by the conclusion that a compelling justification exists to overturn it.[2] By contrast, when analyzing precedent that itself represents a departure from established caselaw, we should apply a decreased presumption in favor of upholding precedent.[3]
In determining whether a compelling justification exists to overturn precedent, the Court may consider numerous evaluative criteria, none of which, standing alone, is dispositive. These criteria include, but are not limited to, whether (1) the precedent has proved to be intolerable because it defies practical workability, (2) reliance on the precedent is such that overruling it would cause a special hardship and inequity, (3) related principles of law have so far developed since the prece *86 dent was pronounced that no more than a remnant of it has survived, (4) facts and circumstances have so changed, or have come to be seen so differently, that the precedent no longer has significant application or justification, (5) other jurisdictions have decided similar issues in a different manner, (6) upholding the precedent is likely to result in serious detriment prejudicial to public interests, and (7) the prior decision was an abrupt and largely unexplained departure from then-existing precedent.[4]
Not all of these factors will be applicable in a given case. Nor is there a magic number of factors that must favor overruling a case in order to establish the requisite compelling justification. Rather, the conclusion about overturning the precedent should be reached on a case-by-case basis.
I believe that Preserve the Dunes, Inc v Dep’t of Environmental Quality[5] was wrongly decided with respect to whether the Department of Environmental Quality (DEQ) may be liable for an alleged violation of the Michigan environmental protection act (MEPA) by issuing a permit.[6] However, this fact alone does not constitute the requisite compelling justification to overrule the decision. Instead, we must examine additional factors.
First, I consider whether Preserve the Dunes has proved intolerable because it defies practical workability. I believe that it does. The Preserve the Dunes majority held that the DEQ’s issuance of a permit is “unrelated to” alleged environmental harm and thus *87 insulated from scrutiny under MEPA.[7] This conclusion was directly contrary to a simple reading of MEPA. MCL 324.1701(1) provides, in pertinent part:
\A\ny person may maintain an action in the circuit court... where the alleged violation occurred or is likely to occur for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources... from pollution, impairment, or destruction. [Emphasis added.]
Under the act, a plaintiff makes a prima facie case by showing “that the conduct of the defendant... is likely to . . . destroy . . . natural resources or the public trust in these resources.”[8]
The Preserve the Dunes majority’s conclusion that eligibility for a permit is unrelated to whether the conduct permitted will harm the environment is untenable. Issuance of a permit to an ineligible party to engage in an activity that will harm the environment will certainly allow “conduct... likely to pollute, impair, or destroy... natural resources or the public trust in these resources” under MCL 324.1703(1). Indeed, before Preserve the Dunes, this Court observed that a violation of a permitting procedure can support a prima facie claim under MEPA.[9] Thus, by gutting the environmental protections afforded to Michigan citizens by MEPA, Preserve the Dunes mocked our Legislature’s intent to prevent environmental harm. Accordingly, Preserve the Dunes was inherently unworkable under the statutory provisions provided by the Legislature.
*88 Second, I consider whether reliance interests weigh in favor of overruling Preserve the Dunes. I conclude that they do. Preserve the Dunes is of relatively recent vintage, having been decided a mere six years ago. Hence, any reliance on its holding has been of limited duration. Moreover, Preserve the Dunes represented a sea change in one area of the law and toppled settled interpretations of MEPA that had existed for nearly 30 years.[10] In doing so, Preserve the Dunes disrupted the reliance interests of Michigan citizens who relied on MEPA’s provisions to bring suit for alleged environmental pollution, impairment, or destruction.
I recognize that there exists a competing reliance interest in the continuing validity of Preserve the Dunes: that of the DEQ in defending its permitting decisions. Yet Preserve the Dunes’ annihilation of the crux of a MEPA complainant’s claim — the desire to quell environmental degradation — effectively removed altogether the ability to challenge permitting decisions as allowed by MEPA. I conclude that, while the DEQ’s reliance on this interpretation is understandable, it is not sufficient to preclude overruling Preserve the Dunes given the extent of prejudice to those availing themselves of MEPA’s straightforward language.
Third, I consider whether related principles of law have developed since Preserve the Dunes was decided. This factor is inapplicable to my stare decisis analysis in this case, as no intervening change in the law further supports or undermines the continuing legitimacy of Preserve the Dunes.
*89 Fourth, I examine whether facts and circumstances have so changed, or have come to be seen so differently, that Preserve the Dunes has been robbed of significant justification. Like the previous factor, I discern no factual or circumstantial changes that counsel for or against overruling Preserve the Dunes. Therefore, this factor is also inapplicable to my analysis.
Fifth, I consider whether other jurisdictions have decided similar issues in a different manner. This factor is likewise inapplicable to my stare decisis analysis. MEPA is unique to our state. Although other states’ environmental legislation may share the fundamental underpinnings of MEPA, judicial interpretations thereof have evolved independently of those of other states with similar environmental schemes. Thus, other jurisdictions’ interpretations of similar statutes are unhelpful to our analysis in this case.
Sixth, I examine whether upholding Preserve the Dunes is likely to result in serious detriment prejudicial to public interests. This factor weighs heavily in favor of overruling Preserve the Dunes. In one swoop of a pen, the Preserve the Dunes majority obliterated environmental protection statutes enacted by the Legislature. As persuasively noted by Justice DAVIS, MEPA was enacted in response to our state’s constitutional commitment to the conservation and development of the natural resources. Our constitution provides:
The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction.[11]
*90 Furthermore, as we stated in Ray:
Michigan’s EPA was the first legislation of its kind and has attracted worldwide attention. The act also has served as a model for other states in formulating environmental legislation. The enactment of the EPA signals a dramatic change from the practice where the important task of environmental law enforcement was left to administrative agencies without the opportunity for participation by individuals or groups of citizens. Not every public agency proved to be diligent and dedicated defenders of the environment. The EPA has provided a sizable share of the initiative for environmental law enforcement for that segment of society most directly affected — -the public.
But the EPA does more than give standing to the public and grant equitable powers to the circuit courts, it also imposes a duty on individuals and organizations both in the public and private sectors to prevent or minimize degradation of the environment which is caused or is likely to be caused by their activities.[12]
Thus, whereas MEPA represents the culmination of the Legislature’s deliberative process, Preserve the Dunes undermined the Legislature’s decision to allow challenges to both real and potential harms to the environment. The impact of Preserve the Dunes was undoubtedly felt not only by the environment, but by the public. The citizens of Michigan were stripped of their ability to enforce environmental protection mechanisms granted by the Legislature.
Finally, I consider whether Preserve the Dunes represented an abrupt and largely unexplained departure from precedent. I conclude that this factor also weighs heavily in favor of overruling Preserve the Dunes. As *91 previously noted, Preserve the Dunes implicitly overruled numerous previous decisions of this Court interpreting MEPA.[13] Those decisions stood as principled interpretations of MEPA until Preserve the Dunes unexpectedly swept them aside decades later. Therefore, Preserve the Dunes represented an abrupt and unexplained departure from precedent.
In summary, Preserve the Dunes (1) is unworkable because it usurped the Legislature’s grant of a cause of action regarding environmental harm, (2) caused serious detriment prejudicial to public interests, and (3) represented an abrupt and largely unexplained departure from precedent. Accordingly, I conclude that a compelling justification exists for overruling it.
CAVANAGH, J., concurred with KELLY, C.J.

 Petersen v Magna Corp, 484 Mich 300, 317; 773 NW2d 564 (2009) (opinion by Kelly, C.J.).

 Id.

 Univ of Mich Regents v Titan Ins Co, 487 Mich 289, 303; 791 NW2d 897 (2010), citing Adarand Constructors, Inc v Peña, 515 US 200, 233-234; 115 S Ct 2097; 132 L Ed 2d 158 (1995).

 Petersen, 484 Mich at 320.

 Preserve the Dunes, Inc v Dep’t of Environmental Quality, 471 Mich 508; 684 NW2d 847 (2004).

 MCL 324.1701 et seq.

 Preserve the Dunes, 471 Mich at 511.

 MCL 324.1703(1).

 A “plaintiffs prima facie case is ‘not restricted to actual environmental degradation hut also encompasses probable damage to the environment as well.’ ” Nemeth v Abonmarche Dev, Inc, 457 Mich 16, 25; 576 NW2d 641 (1998), quoting Ray v Mason Co Drain Comm’r, 393 Mich 294, 309; 224 NW2d 883 (1975).

 See, e.g., Eyde v Michigan, 393 Mich 453, 454; 225 NW2d 1 (1975); Ray, 393 Mich at 304-305; West Mich Environmental Action Council v Natural Resources Comm, 405 Mich 741, 751; 275 NW2d 538 (1979); Nemeth, 457 Mich 16.

11 Const 1963, art 4, § 52 (emphasis added).

12 Ray, 393 Mich at 304-306.

 See n 10 of this opinion.